*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FREEMAN/TAITE, Minors.

UNPUBLISHED
February 6, 2020

No. 349662
Wayne Circuit Court
Family Division
LC No. 18-001592-NA

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to four of her five minor children, under MCL 712A.19b(3)(b)(*ii*) ("[t]he parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home[]"), and MCL 712A.19b(3)(j) ("[t]here is a reasonable likelihood, on the basis of the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent[]"). We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises out of a complaint Children's Protective Services (CPS) received on August 9, 2018, indicating that JF, who was two-and-a-half-months old, sustained severe physical injuries consistent with shaken baby syndrome. JF was treated at Saint John Hospital, where medical staff determined that his injuries were nonaccidental and consistent with physical abuse. JF had new and old brain bleeds, an increased head circumference, a subdural hematoma, and retinal hemorrhaging.

Respondent-mother told a CPS specialist she did not know what caused the infant's injuries, but that JF fell ill right around the time of a bus trip to New York, and she assumed he fell ill because of the trip conditions, initially suggesting that it was the heat and later attributing it to a bouncy ride without a car seat.[1] Several days after the bus trip, respondent-mother contacted

---

[1] AF, JF's father, offered a similar explanation.

-1-

JF's pediatrician because JF was visibly ill; the pediatrician's office scheduled an appointment for two weeks later. In the two weeks before JF's appointment, JF had been vomiting, was lethargic, and had a swollen head. Upon presentment, the pediatrician noticed JF's increased head circumference and he was rushed to Saint John Hospital. When a Detroit police detective interviewed respondent-mother and JF's father AF, AF admitted to shaking JF out of frustration; AF admitted the same to the CPS specialist.[2]

The Department of Health and Human Services (DHHS) sought permanent custody of respondent-mother's five children in its initial petition. Respondent-mother admitted to the allegations in the petition and stipulated to the existence of statutory grounds for termination under MCL 712A.19b(3)(b)(*ii*) and MCL 712A.19b(3)(j). During the best interests hearing, the CPS specialist testified that services were not being provided because respondent-mother's case was for permanent custody and opined that termination of respondent-mother's parental rights was in the best interests of all five of her children. A Clinic for Child Study evaluation entered into evidence at the best-interests hearing recommended that the trial court not terminate respondent-mother's parental rights and that DHHS provide her with services to reunify her with the children.[3]

The trial court found that it was in the best interests of ET KT, LF, and JF to terminate respondent-mother's parental rights. The court acknowledged the existence of parent-child bonds, but observed that the evidence suggested that respondent-mother and AF were attempting to "cover up" the cause of JF's injuries, and that this was the second child of theirs to suffer nonaccidental injuries. The court acknowledged that respondent-mother had completed parenting classes on her own, but noted that she had completed parenting classes subsequent to a nonaccidental injury to another child, LF, in 2017, apparently with insufficient benefit. The court considered the relative placement of two of the children and concluded that it did not weigh against termination. The court also considered each child's individual interests, and found that it was not in JT's best interests to terminate respondent-mother's parental rights because JT was older, did not want to be adopted, and had been in the care and custody of his maternal grandmother for eight years. The court issued an order terminating respondent-mother's parental rights on April 24, 2019. This appeal followed.

---

[2] The trial court found that clear and convincing evidence established the grounds for termination of AF's parental rights under MCL 712A.19b(3)(b)(*i*) ("[t]he parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home[]"), MCL 712A.19b(3)(j), MCL 712A.19b(3)(k)(*iii*) ("[b]attering, torture, or other severe physical abuse[]"), MCL 712A.19b(3)(k)(*iv*) ("[l]oss or serious impairment of an organ or limb"), and MCL 712A.19b(3)(k)(*v*) ("[l]ife-threatening injury[]"). The court also found by a preponderance of the evidence that termination of AF's parental rights was in best interests of LF and JF. AF has not appealed the trial court's April 24, 2019 order terminating his parental rights.

[3] The study made the same recommendations for AF.

## II. ANALYSIS

### A. REASONABLE EFFORTS

Respondent-mother contends that it was fundamentally unfair for the trial court to terminate her parental rights without providing respondent-mother with a treatment plan. We disagree. Respondent-mother did not preserve this issue by raising it in the trial court. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014) (citations omitted). Therefore, our review is for plain error affecting respondent-mother's substantial rights. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). Respondent-mother must show that an error occurred, that it was plain, or obvious, and that it affected the outcome of the proceedings. *Id*.

"Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). Typically, the DHHS is required to devise a case service plan identifying, among other things, the efforts DHHS will make to reunify the child with his or her parent(s). MCL 712A.18f(2); MCL 712A.18f(3)(c). Reasonable efforts include referrals for appropriate services and active efforts to engage respondents in those services. See *In re JL*, 483 Mich 300, 322 n 15; 770 NW2d 853 (2009).

Nevertheless, recognized exceptions exist for cases "involving aggravated circumstances under MCL 712A.19a(2)." *In re L D Rippy*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 347809); slip op at 2. Pursuant to MCL 712A.19a(2)(a), reasonable efforts are not required if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 722.638 states, in relevant part:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

> * * *

> (*iii*) Battering, torture, or other severe physical abuse.

> (*iv*) Loss or serious impairment of an organ or limb.

> * * *

> (*v*) Life threatening injury.

> * * *

> (2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due

-3-

to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

Thus, DHHS is not required to make reasonable efforts aimed at reunification where child protective proceedings involve severe physical abuse, loss or serious impairment of an organ or limb, or life-threatening injury.

In the present case, DHHS sought termination at the initial disposition because JF's injuries met the aggravating circumstances criteria of MCL 722.638(1)(a)(*iii*), (*iv*), and (*v*). DHHS received a complaint indicating that JF, who was two-and-a-half-months old, sustained severe nonaccidental life-threatening physical injuries consistent with shaken baby syndrome while he was in respondent-mother's and AF's care. In addition, JF's magnetic resonance imaging scans revealed old and new brain bleeds, suggesting not just one incident. As a result of his brain injuries, JF underwent an emergency surgery and has ongoing medical needs, including a feeding tube. Upon investigation by CPS, AF admitted that he shook JF out of frustration with the infant. DHHS also noted that LF suffered a nonaccidental injury when she was about the same age as JF. In 2017, respondent-mother and AF admitted that LF sustained a broken femur, allegedly when AF rolled onto her as she slept in the bed with him. Thus, DHHS properly sought termination of respondent-mother's parental rights in its original petition because DHHS believed she failed to intervene to protect her children from AF's physical abuse, see MCL 722.638(2), and that respondent-mother's pattern of behavior put all of her children at risk of harm if they remained in her care. Under these circumstances, DHHS was not required to devise a case service plan and to offer services to respondent-mother. See MCL 712A.19a(2).

Respondent-mother claimed she was unaware that AF shook and injured JF, and she told the CPS foster care specialist she believed JF's head injury was caused due to bus transportation conditions. Regardless of what respondent-mother told the CPS investigator at the initiation of the case, she ultimately admitted under oath to the court's jurisdiction pursuant to MCL 712A.2(b)(1) (failure to provide the medical care necessary for a child's health when otherwise able to do so) and to the existence of grounds to terminate under MCL 712A.19b(3)(b)(*ii*) (failure of parent who could have prevented physical injury to do so, and a reasonable likelihood of future injury or abuse if the child is returned to the parent's care). The trial court accepted respondent-mother's admissions as true, and the record supports them. Accordingly, we see no reason for reversing the trial court's finding of statutory grounds. See *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005) (indicating that this Court will not reverse the findings of the trial court unless its findings are clearly erroneous and will defer to the trial court's special opportunity to judge the credibility of witnesses.).

Respondent-mother further contends that she would have successfully complied with services had she had the opportunity to participate in a service plan, considering that she voluntarily completed parenting classes and that she separated from AF. As already indicated, however, DHHS was not required to provide respondent mother with referrals to services because aggravated circumstances were involved. See MCL 712A.19a(2)(a); MCL 722.638(1)(a).

Respondent-mother also implies that failure to provide her with a case service plan violated her right to fundamentally fair procedures. See *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982) ("When the State moves to destroy weakened familial bonds, it must

provide the parents with fundamentally fair procedures."); see also *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2011) (acknowledging the right to fundamentally fair procedures expressed in *Santosky*). We disagree with respondent-mother's implication.

"In Michigan, procedures to ensure due process to a parent facing removal of [her] child from the home or termination of [her] parental rights are set forth by statute, court rule, DHHS policies and procedures, and various federal laws[.]" *In re Rood*, 483 Mich 73, 93; 763 NW2d 587 (2009) (bracket omitted). "Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established under [MCL 712A.19b(3)], the liberty interest of the parent no longer includes the right to custody and control of the child." *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). Respondent-mother's implication fails to recognize that her "right to control the custody and care of her children is not absolute," that the state has a legitimate interest in protecting the children, and that, "in some circumstances 'neglectful parents may be separated from their children.' " *In re Sanders*, 495 Mich 394, 409-410; 852 NW2d 524 (2014), quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972).

The trial court accepted respondent-mother's stipulation to the existence of statutory grounds under MCL 712A.19b(3)(b)(*ii*) and MCL 712A.19b(3)(j). Thus, respondent-mother's due process right to the companionship, custody, care, and management of her children was not violated because the trial court found, based on respondent-mother's plea and the record then before it, that statutory grounds for termination were established by clear and convincing evidence. "[A]t that point, 'the parent's interest in the companionship, care, and custody of the child gives way to the state's interest in the child's protection.' " *In re Moss*, 301 Mich App at 93-94 (WILDER, J., concurring), quoting *In re Trejo*, 462 Mich at 356.

Given the existence of aggravated circumstances identified in MCL 722.638(1)(a), DHHS was not required to provide services and was required to seek termination in the initial petition pursuant to MCL 722.638(1) and (2). Having legal representation, respondent-mother admitted to the existence of at least one statutory ground for termination, at which point her liberty interest as a parent gave way to the state's right to protect the children. See *In re Trejo*, 462 Mich at 355. Therefore, respondent mother has established neither plain error nor a denial of fundamentally fair procedures.

## B. BEST INTERESTS

Respondent-mother next argues that termination of her parental rights was not in her children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90; MCL 712A.19b(5). "If the court finds that there are grounds for termination and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights[.]" MCL 712A.19b(5). This Court reviews the trial court's

ruling regarding best interests for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, [this Court is] left with a definite and firm conviction that a mistake has been made." *Id*.

The focus of the best-interests inquiry is on the child, not the parent. *In re Moss*, 301 Mich App at 87. A trial court should weigh all the evidence available to it, *In re Payne/Pumphrey/Forston*, 311 Mich App 49, 63; 874 NW2d 205 (2015), including the evidence establishing the statutory grounds for termination, see *In re Trejo*, 462 Mich at 353-354. Specifically:

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (citations and quotation marks omitted).]

In addition, under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (alteration in original; quotation marks and citation omitted).

Respondent-mother's only best-interests argument on appeal is that "it was not fundamentally fair to terminate [her] parental rights without giving her a Treatment Plan." As discussed above, we find this argument unpersuasive under the circumstances presented here. The trial court considered the bond between respondent-mother and her children, prior CPS involvement under similar circumstances and respondent-mother's completion of parenting classes then, the fact that this was the second child to suffer nonaccidental physical injuries, the children's current placements, and the children's individual needs. The court also considered a Clinic for Child Study evaluation, which recommended that the court not terminate respondent-mother's parental rights. Based on its review of all of the evidence, the court concluded that the preponderance of the evidence showed termination to be in the best interests of four of the five children. Given the record before us, we are not left with a "definite and firm conviction" that the trial court made a mistake. *In re Schadler*, 315 Mich App at 406.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens